**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-4540**

_____

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

KEITH POYNTER, JR.,

        Defendant - Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Stephanie A. Gallagher, District Judge.  (1:20-cr-00452-SAG-1)

_____

Submitted:  April 24, 2025                              Decided:  June 25, 2025

_____

Before KING and RUSHING, Circuit Judges, and FLOYD, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Marc G. Hall, LAW OFFICES OF MARC G. HALL, P.C., Greenbelt, Maryland, for Appellant. Erek L. Barron, United States Attorney, John W. Sippel, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Keith Poynter, Jr., of eight federal offenses based on his involvement in a string of armed robberies that occurred in December 2019 around Baltimore, Maryland. The district court sentenced Poynter to 312 months' imprisonment. On appeal, Poynter presents two challenges to his convictions: (1) the district court erred in admitting the testimony of an expert witness on historical cell site location data, and (2) the district court erred in admitting part of the testimony of one of Poynter's coconspirators. We conclude that neither challenge has merit and so we affirm.

Because Poynter did not object to the admission of either witness's testimony during trial, we review both issues on appeal for plain error only. *See United States v. Walker*, 32 F.4th 377, 394 (4th Cir. 2022) ("When a criminal defendant fails to object to the district court's evidentiary rulings at trial, we review for plain error."). To prevail on plain error review, Poynter "must show (1) that the district court erred, (2) that the error was plain, and (3) that the error affected his substantial rights." *United States v. Ojedokun*, 16 F.4th 1091, 1113 (4th Cir. 2021) (internal quotation marks omitted). "A plain error is said to be an error so clear or obvious that it jumps off the page." *United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 200 (4th Cir. 2018) (internal quotation marks omitted). And "[a] plain error affects the defendant's substantial rights if it was prejudicial, in that there is a reasonable probability that the error affected the outcome of the trial." *Ojedokun*, 16 F.4th at 1113 (internal quotation marks omitted). Even if Poynter satisfies those three plain error requirements, "we possess discretion on whether to recognize the error" and will not "do so unless the error seriously affects the fairness, integrity or public reputation of judicial

2

proceedings." *United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018) (internal quotation marks omitted).

Poynter first argues that the district court erred in admitting the testimony of an expert witness on historical cell site location data. Very generally, that expert witness testified that she used cell site location data from the date of the robberies to place Poynter and his coconspirators near the scenes of the robberies. *See United States v. Hill*, 818 F.3d 289, 295 (7th Cir. 2016) ("Historical cell-site analysis uses cell phone records and cell tower locations to determine, within some range of error, a cell phone's location at a particular time."). On appeal, Poynter contends that the expert witness's testimony should have been excluded under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Poynter argues—among other things—that the expert witness failed to explain her methodology, relied on an incorrect assumption that cell phones always connect to the closest cell tower, did not perform testing in the field to confirm her opinions, and neglected to testify about published studies in the area of historical cell site location analysis or error rates for such analysis.

Having thoroughly reviewed the record, we are satisfied that the district court did not err, let alone plainly so, in admitting the expert witness's testimony on historical cell site location data. As another federal court of appeals somewhat recently recognized, "[c]ourts have generally found historical cell-site analysis to be reliable and admissible." *United States v. Morgan*, 45 F.4th 192, 202 (D.C. Cir. 2022); *see, e.g.*, *Hill*, 818 F.3d at 295-99 (ruling that district court did not abuse its discretion in admitting expert testimony

3

about location of defendant based on historical cell site location data). We reach the same conclusion after reviewing the expert witness's testimony in that area here.

Contrary to Poynter's assertions, the expert witness explained her methodology in detail and acknowledged that cell phones generally, but not always, connect to the closest cell tower. The expert witness also was not required to perform testing in the field before her testimony could be admitted. Indeed, the expert witness testified about the detailed reports that she received from the relevant cellular service provider and the general accuracy of those reports, which together made it unnecessary to perform field-testing. Moreover, insofar as Poynter criticizes the expert witness for not testifying about published studies of historical cell site analysis or the error rate for such analysis, the witness likely did not do so because Poynter never challenged the admissibility of the witness's testimony on those grounds. In any event, while *Daubert* acknowledges the relevance of such information, 509 U.S. at 593-94, "*Daubert*'s fundamental command" is that "expert testimony be reliable and relevant," *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 638 (4th Cir. 2018). And here, the expert witness offered sufficient testimony establishing that her principles and methods were reliable and that her testimony was relevant to the charges against Poynter.

But even if the district court erred in admitting the expert witness's testimony, we would conclude that any error is not plain. That is, neither the "settled law of the Supreme Court [n]or this circuit establishes" that the testimony on historical cell site location data was inadmissible. *United States v. Carthorne*, 726 F.3d 503, 516 (4th Cir. 2013) (internal quotation marks omitted).

4

Poynter next argues that the district court erred in admitting part of the testimony of his coconspirator, Tiffany Gardner. In particular, Poynter contests the admission of Gardner's testimony that another coconspirator, Benjamin Bunn, Jr., was involved in prior robberies and sometimes hired other people to commit the robberies for him.[1] Poynter contends that this testimony was not relevant under Fed. R. Evid. 401 because it did not relate to the charges in this case. Poynter also argues that this testimony should have been excluded under Fed. R. Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice to him. Specifically, Poynter insists that Gardner's testimony could have led the jury to believe that Bunn had hired him to commit robberies in the past and that Poynter had a bad character based on his involvement in those robberies.

We conclude that the district court did not err in admitting Gardner's testimony on this topic. Bunn's past involvement in similar robbery schemes was no doubt relevant to the charges against Poynter. For instance, that evidence had a tendency to make more probable the fact that Bunn hired Poynter to participate in this robbery conspiracy. *See United States v. Potter*, 927 F.3d 446, 452 (6th Cir. 2019) ("[A]s evidence experts have long recognized, a prior bad act satisfies the relevancy test's low bar even when used to show a person's propensity to commit the indicted crime. That is why a separate rule— [Fed. R. Evid.] 404(b)—prohibits that use of bad acts evidence and why most objections to this type of evidence invoke that rule." (citations and internal quotation marks omitted)).

---

[1] Later in her testimony, Gardner confirmed that Bunn hired Poynter to commit the armed robberies in this case.

5

As for Poynter's argument under Rule 403, Gardner's testimony was not entirely clear on whether Bunn hired Poynter to commit robberies other than these ones. Rather, Gardner's testimony can be reasonably read as first discussing Bunn's hiring of other persons to commit past robberies and then describing Bunn's hiring of Poynter to commit these robberies But even if Gardner's testimony did suggest that Bunn hired Poynter to commit past robberies, that "evidence is substantially similar, or at least no more sensational, than the crimes charged," so it was not unfairly prejudicial under Rule 403.[2] *United States v. Chaudhri*, __ F.4th __, __, Nos. 23-4054, 23-4077, 23-4078, 2025 WL 1037524, at *10 (4th Cir. Apr. 8, 2025).

Finally, assuming that the district court erred in admitting the challenged testimony of the expert witness and Gardner, we would conclude that the errors did not affect Poynter's substantial rights given the other overwhelming evidence of his guilt submitted at trial, including the remainder of Gardner's testimony, eyewitness identification testimony, and surveillance videos of the robberies.[3]

Accordingly, we deny Poynter's pro se motions to file a supplemental brief and for substitute counsel, and we affirm the district court's amended judgment. *See United*

---

[2] Poynter does not argue that Gardner's testimony was inadmissible under Fed. R. Evid. 404(b). Rather, his submissions on appeal make clear that his challenge is limited to arguments under Rules 401 and 403.

[3] The parties did not include the surveillance videos in the Joint Appendix. Even so, several witnesses at trial described what some of those videos depict. And the descriptions of those videos corroborate the testimony of Gardner and others that Poynter committed the armed robberies.

6

*States v. Williams*, 5 F.4th 500, 511 n.7 (4th Cir. 2021) (recognizing that represented defendant has no right to file pro se brief and denying pro se motion for substitute counsel in part because it was untimely). We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*